THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL DICIURCIO,<br><br>Defendant. | Civil Case No. 24-cv-612 |

## ORDER

AND NOW, this _____ day of _____, 2024, upon consideration of the United States' Motion for Preliminary Injunction, and supporting memorandum, and any opposition thereto, it is hereby ORDERED that the motion is GRANTED. Plaintiff the United States of America has established a likelihood of success on the merits of its claims that DiCiurcio has violated and continues to violate small unmanned air system flight safety regulations, that it will be irreparably injured absent an order enjoining DiCiurcio from continuing to operate such aircraft unsafely, that the balance of the equities favors it, and that a preliminary injunction is consistent with the public interest.

THEREFORE, IT IS ORDERED THAT Defendant Michael DiCiurcio is enjoined from operating any civil aircraft not in full compliance with 49 U.S.C. § 44809 or 14 C.F.R. Part 107.

BY THE COURT:

_____
HONORABLE MITCHELL S. GOLDBERG
*Judge, United States District Court*

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )   Civil Case No. 24-cv-612<br>) |
| MICHAEL DICIURCIO, | )<br>) |
| Defendant. | )<br>) |

## THE UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR HEARING

Under Federal Rule of Civil Procedure 65(a)(2), and for the reasons more fully explained in the accompanying brief, the United States moves the Court for an order preliminarily enjoining defendant Michael DiCiurcio from operating any civil aircraft not in full compliance with 49 U.S.C. § 44809 or 14 C.F.R. Part 107. The United States incorporates the accompanying memorandum of law, and respectfully requests that the Court schedule a hearing at which the United States will present evidence in support of the motion.

February 13, 2024

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*s/ Gregory B. David*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*s/ Viveca D. Parker*
VIVECA D. PARKER
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL DICIURCIO, ) <br> ) <br> Defendant. ) <br> ) | Civil Case No. 24-cv-612 |

## MEMORANDUM OF LAW SUPPORTING MOTION
## FOR PRELIMINARY INJUNCTION

### I. INTRODUCTION

This motion seeks a preliminary injunction enjoining defendant Michael DiCiurcio from operating small unmanned aircraft systems ("sUAS") in violation of Federal Aviation Administration safety regulations. The United States' Verified Complaint, and the declarations and exhibits filed herewith provide evidence that defendant has engaged in, and is continuing to engage in, unsafe and illegal flying of sUAS, commonly known as drones, endangering people, property, other aircraft, and wildlife. The United States therefore seeks an order that enjoins defendant from his ongoing improper operation of sUAS. Such an order will help terminate defendant's continued flouting of Federal Aviation Administration ("FAA") regulations and safeguard the public from further risks of defendant's recklessness.

The Verified Complaint fully outlines the facts of this matter. Contemporaneous herewith, the United States filed a Notice of Filing Exhibits containing the exhibits to this memorandum (videos of DiCiurcio operating sUAS), and attached hereto the Declarations of FAA Inspector Michael Bauer and Safety Technician Joseph Downey.

### *Operating Small Unmanned Aircraft Systems – i.e., "Drones"*

The FAA regulates the operation of commercial and recreational aircraft, including small unmanned aircraft systems – "drones." Unmanned aircraft are aircraft without a human pilot on board; they are controlled by an operator on the ground. Operators flying unmanned aircraft can endanger other aircraft, people, or property when flying recklessly or without regard to risks, and drones can reach speeds greater than 80 mph. Additionally, most unmanned aircraft manufactured for recreational use are not tested to any FAA standards for airworthiness, meaning they come with no assurance they will stay airborne or fly in a predictable manner, especially when encountering unexpected circumstances such as radio interference, winds, or power failures. Therefore, maintaining the drone within the operator's line of sight is vital.

The operator of an unmanned aircraft is expected to know and to follow the rules for flying safely. "When you fly an unmanned aircraft in the United States, it is your responsibility to ensure the safety of the flight, and to understand and follow the appropriate Federal, state, and local laws." Advisory Circular dated 5/31/19, issued by Dept. of Transportation, Federal Aviation Administration, ¶ 7.

Operators who fly sUAS strictly for recreational purposes must comply with 49 U.S.C. § 44809. Some of the requirements in that statute include: 1) flying within the visual line of sight of the operator or a co-located visual observer, 2) flying no more than 400 feet above ground in Class G airspace (uncontrolled airspace), and only with prior authorization in Class B, C, D and certain Class E airspace, and 3) the operator has passed a knowledge and safety test. 49 U.S.C. § 44809(a) (1)-(8).

If, like DiCiurcio, sUAS operators seek to profit from their activity, they must comply with FAA regulations found at 14 C.F.R. Part 107 (§§ 107.01 et seq.). Among the requirements in those FAA regulations that DiCiurcio has violated are that the remote pilot have the appropriate remote pilot certificate (DiCiurcio does not), and poses no undue hazard to people, property or other aircraft. The requirements are set forth at length at paragraph 37 (a) through (l) of the Verified Complaint.

*Defendant Michael DiCiurcio*

Philadelphia resident Michael DiCiurcio owns and operates numerous sUAS, commonly known as "drones." DiCiurcio frequently posts images of himself operating sUAS on his YouTube channel, and solicits payments from viewers to fund his continued sUAS activities. Downey Dec. ¶ 4. DiCiurcio operates his sUAS without authorization in controlled airspace near the busy Philadelphia International Airport, over people, traffic, and tall buildings in the city of Philadelphia, in inclement weather, at night, close to buildings, and in violation of numerous regulations and guidelines designed to keep people and property safe. Bauer Dec. ¶¶ 15-21. At least thirty-four times, DiCiurcio flew sUAS without a remote pilot certificate, in violation of at least a dozen regulations, and under unsafe circumstances, including lacking the ability to control the sUAS, in fog, snow, rain, wind, and darkness. On at least three occasions, the FAA warned him, counseled, and educated him, about his improper sUAS operations. In defiance of the applicable regulations and the warnings he received, DiCiurcio persists in operating sUAS in a dangerous and unacceptable manner. The FAA continues to receive citizen complaints documenting DiCiurcio's reckless conduct. The United States brings this motion for preliminary relief from the ongoing serious threat posed by DiCiurcio's dangerous sUAS operations.

### *DiCiurcio's Past Violations*

For years, DiCiurcio has ignored the applicable provisions of 14 C.F.R. Part 107 of the Federal Aviation Regulations that require a person operating sUAS as remote pilot in command to pass the test certifying them as a remote pilot, and to have the ability to direct and control the sUAS to ensure compliance with the regulations. Those acting as pilot in command of a sUAS must ensure that it would pose no undue hazard to other people, other aircraft, or other property in the event of a loss of control of the sUAS for any reason. 14 C.F.R. § 107.19(c). The pilot in command must assess the operating environment, considering risks to persons and property in the immediate vicinity both on the surface and in the air; specifically, weather, airspace and any flight restrictions, and/or persons and property on the surface – and use good judgment accordingly. *See generally* Bauer Dec. ¶¶ 8-13. The pilot in command must operate the sUAS with vision that is unaided by any device other than corrective lenses and ensure that he/she is able to see the sUAS throughout the entire flight in order to: (1) know the unmanned aircraft's location; (2) determine the unmanned aircraft's attitude, altitude, and direction of flight; (3) observe the airspace for other air traffic or hazards; and (4) determine that the sUAS does not endanger the life or property of another. 14 C.F.R. § 107.31. Finally, those operating sUAS, whether for recreation or otherwise, must have the appropriate certification. 49 U.S.C. § 44809(a)(8); 14 C.F.R. §§ 107.12, 107.13.

Efforts to bring DiCiurcio into compliance with these and other FAA regulations also began years ago. After receiving a citizen complaint in August 2019, FAA investigators linked to DiCiurcio's YouTube channel, PhillyDroneLife. On this channel, DiCiurcio identifies himself as the operator and livestreams sUAS flights. The flights identified in the Verified Complaint are some of those flights livestreamed on DiCiurcio's YouTube channel.

FAA Principal Maintenance Inspector Michael Bauer and FAA Aviation Safety Technician Joseph Downey lead the FAA's investigations of DiCiurcio. Both Bauer and Downey focus on sUAS flying, and each has his own extensive experience flying sUAS. Inspector Bauer and Technician Downey will testify to all of the following statements, and their respective declarations are attached.

Upon receiving a complaint about DiCiurcio's operating a sUAS in August 2019, the FAA investigated. After confirming that DiCiurcio had operated his sUAS inappropriately, the FAA contacted DiCiurcio, speaking with him by telephone, and offered him in-person training, which DiCiurcio refused. The FAA sent DiCiurcio written guidance on November 6, 2019. On November 20, 2019, the FAA sent DiCiurcio a warning notice and additional guidance on the rules and regulations governing sUAS flights. Bauer Dec. ¶¶ 15-16.

Another citizen complaint of DiCiurcio's unsafe flying provided the link to DiCiurcio's YouTube channel, where DiCiurcio livestreamed videos of his flights taking place after he received the educational materials and warning – unsafe flights that occurred in December 2019, and January and February 2020. The FAA again sent notice to DiCiurcio, and Inspector Bauer spoke with DiCiurcio about his unsafe flying on March 12, 2020. Inspector Bauer spoke with DiCiurcio by telephone and described to DiCiurcio examples of his reckless and unsafe flights over 400 feet, over people, at excessive distances, and during adverse weather. DiCiurcio stated that he "knows the rules," and ended the call. Bauer Dec. ¶¶ 14, 17-20.

Throughout 2020, the FAA received citizen complaints and observed unsafe flights by DiCiurcio on his YouTube channel. The FAA continued to investigate, and again notified DiCiurcio in writing of his violations. DiCiurcio did not respond. Bauer Dec. ¶ 21-22. FAA counsel sent a letter dated November 5, 2020, to DiCiurcio, notifying him that his improper

5

sUAS operations had resulted in a substantial penalty being assessed against him. Bauer Dec. ¶ 23.

On December 16, 2020, Inspector Bauer and FAA counsel Judith Vaughan spoke with DiCiurcio by telephone, discussing DiCiurcio's sUAS flight regulatory violations and the resulting penalty of $182,004.00. DiCiurcio confirmed that he is the operator of the sUAS seen on his YouTube channel. He acknowledged that he was not adhering to any safety guidelines sanctioned by the FAA and that he had not received any training. DiCiurcio stated he could not afford to pay the penalty. Bauer Dec. ¶ 24-26. DiCiurcio has made several statements on his YouTube channel videos after this conference call, stating that he will never pay any fines from the FAA and will not change his flight habits. Bauer Dec. ¶ 26.

The FAA referred the results of its investigation into DiCiurcio's unauthorized operation of sUAS to the U.S. Attorney's office for the Eastern District of Pennsylvania. By letter dated July 20, 2021, undersigned counsel notified DiCiurcio that the penalties associated with his violations of FAA regulations governing operations of sUAS through August 4, 2020, total $182,004.00. None of the penalties has been paid.

DiCiurcio has consistently disregarded FAA regulations over the past several years and openly expressed that he has no intention of stopping his unsafe sUAS operations. The FAA's investigation demonstrates that defendant Michael DiCiurcio failed to comply with the requirements for safe and lawful sUAS flying, as set forth in the Verified Complaint. During the flights described at paragraph 9 of the Verified Complaint, DiCiurcio violated the FAA regulations listed in the Complaint at paragraph 36 (a) through (l), which is incorporated herein by this reference.

***Evidence of DiCiurcio's Ongoing Violations***

The FAA received yet another citizen complaint on February 1, 2021, stating that DiCiurcio continues to "break the rules" when operating his sUAS. Downey Dec. ¶ 7. Between February 2021 and late June 2023, the FAA received numerous citizen complaints about DiCiurcio's reckless flying. For example, on July 21, 2021, a citizen reported that DiCiurcio "[f]lies right over Penns Landing Heliport," and is "rolling the drone as he goes over I95." On August 17, 2021, DiCiurcio is reported to have "ZERO CONTROL once again over the city near Helipad." On January 3, 2022, a citizen reported that DiCiurcio was "[f]lying over hundreds of people assembled for the Mummers Parade." A January 31, 2022 email reports DiCiurcio "city flying, hovering over heavy fast traffic … never has it in line of sign[sic]." DiCiurcio is flying during a "PRESIDENTIAL NFZ" in February 2022. A June 21, 2022 email reports DiCiurcio "[f]lying over 1.5 miles away, over a busy multi-lane highway, and at least one time, directly over a pedestrian. He states clearly that he has lost track of the drone toward the end of the video, i.e., he can't see it and it is obviously well beyond VLOS, even though he is most of the way home by that time."

At other times, DiCiurcio is seen flying over people on a rooftop restaurant (June 7, 2022), flying over fireworks displays (July 5, 2022), buzzing houses and wires flying over people and traffic and crashing the drone (October 20, 2022), and crashing into a building on Broad Street (January 7, 2023). On June 29, 2023, another citizen reports: "This flight was directly over people and moving vehicles, and well out of visual line of sight." On March 11, 2021, DiCiurcio posted a video onto his YouTube channel depicting a sUAS flying toward a flock of geese, cutting through and splitting up the flock. On January 12, 2022, a citizen reported the same type of conduct: "flying like a maniac along the river and into Camden and also chasing

and disturbing birds." On February 23, 2022, DiCiurcio reportedly hit a bird with the drone while flying over a shopping center. These are just some of the complaints forwarded to the FAA about DiCiurcio's operating sUAS; copies are attached to the Downey Declaration ¶¶ 14-25, 30.

Inspector Bauer and Safety Technician Downey viewed all the videos posted to DiCiurcio's YouTube channel beginning in March 2021, after DiCiurcio had been counseled, warned, and notified that he was subject to a penalty. Notably, these more recent postings were edited, no longer livestreamed. Before posting, DiCiurcio edited out the data and flight information displayed to the sUAS operator while flying – the information that tells the operator such things as whether the sUAS is about to exceed the permitted altitude, the sUAS speed, the GPS coordinates, and the date of the flight. DiCiurcio also edited the explicit written warnings that appear on the display during flight telling the operator that the sUAS is about to exceed the permitted altitude, and other data that indicate hazardous or impermissible flight conditions. The operator must then affirmatively click a button on the display to accept or reject the warning before the sUAS will continue to fly. But DiCiurcio no longer livestreamed videos, so viewers could no longer see the date of the flight, the in-flight data, or the warnings that came up on the display during his flights. Downey Dec. ¶¶ 9-11.

Despite DiCiurcio's editing, the videos of his flights submitted with this motion make plain the myriad ways in which he operates sUAS far out of the bounds of the rules and common sense. DiCiurcio frequently flies over the tallest buildings in center city, such as the Comcast Building, One and Two Liberty Place, and the Philadelphia City Hall statue of William Penn, far exceeding the maximum altitude restriction for sUAS, in congested areas, and well beyond his visual line of sight. DiCiurcio's so-called "range tests" of his sUAS capabilities create a significant concern for public safety because of the multiple times he has lost the link between

8

the sUAS controller and the sUAS, causing the sUAS to fly uncontrolled, sometimes crashing, sometimes lost and never recovered.

Almost as disturbing as the actual threat that DiCiurcio's flying poses, is his flagrant contempt for the safety regulations. DiCiurcio livestreamed a video dated February 15, 2022, titled "The F@#k the FAA Show Live." In that video, DiCiurcio threatens to crash his sUAS into a building. Downey Dec. ¶ 26. DiCiurcio posts himself making statements like, "I can do what I want the FAA is scared of me" (Sept. 11, 2022), and bragging about violating the regulations (March 7, 2023). Downey Dec. ¶ 26.

DiCiurcio has stated in his videos that he will never comply with FAA regulations and encourages other sUAS operators to follow his lead. In a video dated October 12, 2021, DiCiurcio stated that he thinks the FAA cannot do anything to him; he plans to see how many violations he can accumulate in one flight and encourages other sUAS operators to do the same to push back against the FAA. Downey Dec. ¶ 27.

DiCiurcio's publicizing his hazardous conduct creates an entirely new level of threat. As one citizen complainant put it, "[t]his will snowball with thousands of copycat pilots doing equally dangerous and illegal flying." June 21, 2022. Another citizen expressed how "deeply concerning for both the safety of the residents and commuters in Philadelphia, as well as the reputation of the drone pilot community" that DiCiurcio's conduct presents. Downey Dec. ¶ 29. At the hearing on this motion, should one be necessary, the government will present the FAA witnesses to testify about the complaints received and DiCiurcio's ongoing sUAS flights and YouTube posting. Based upon all the evidence presented herein and at a hearing, the Court should grant preliminary relief to safeguard the public.

## II. LEGAL STANDARDS

### A. Standard For Granting a Preliminary Injunction

"To prevail in an application for a stay or an injunction, an applicant must carry the burden of making a strong showing that it is likely to succeed on the merits, that it will be irreparably injured absent a stay, that the balance of the equities favors it, and that a stay is consistent with the public interest." *Whole Woman's Health v. Jackson*, -- U.S. --, 141 S. Ct. 2494, 210 L.Ed.2d 1014 (2021) (internal quotes and citations omitted). *See also ASI Business Sols, Inc. v. Otsuka Am. Pharm., Inc.*, 233 F.3d 432, 437 (3d Cir. 2017) (four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest) (citations omitted).

"In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

### B. Probable Success On the Merits

To meet the first of the four factors, a plaintiff must make out a *prima facie* case, and show "a reasonable chance, or probability, of winning" on the merits. *22nd Century Techs., Inc. v. iLabs, Inc.*, No. 22-1830, 2023 WL 3409063, at *3 (3d Cir. May 12, 2023) (internal quotes and citations omitted). A reasonable chance is "not necessarily more likely than not." *Id.* (citation omitted). The plaintiff need not prove their claim beyond all doubt, but must establish a prima facie case. *See Punnett v. Carter,* 621 F.2d 578, 588 (3d Cir. 1980).

Here, the government presents strong proof of DiCiurcio's dangerous violations of FAA regulations. Each of the flights listed in the Verified Complaint are supported by video evidence of DiCiurcio livestreaming the flights (video exhibits filed concurrently herewith). The videos are electronic files captured and provided by the FAA Cyber Investigations Branch (AXI-410). There can be no doubt that each flight was recorded as DiCiurcio himself narrates the livestream, including describing flying over people, through fireworks, over moving vehicles, near airplanes, at night, beyond visual line of sight, above 400 feet, and losing connection and control of the sUAS. FAA Inspector Bauer and Safety Technician Downey will testify to how these videos were collected and preserved. They also will explain what the videos show in terms of what safety regulations DiCiurcio violated during each of these flights, as well as what threats to persons and property DiCiurcio's activities pose. Finally, FAA agents Bauer and Downey also will testify about the citizen complaints received, and that the links to videos provided in those complaints show DiCiurcio flying sUAS in unsafe ways. The government will establish that it has more than a reasonable probability of success on the merits.

C.   **Irreparable Injuary**

"The requisite feared injury or harm must be irreparable—not merely serious or substantial, and it must be of a peculiar nature, so that compensation in money cannot atone for it." *ASI Business Sols.*, 233 F.3d at 437[1]

---

[1] Notably, the FAA regulations at issue in the Verified Complaint are intended to safeguard the public. Under these circumstances, DiCiurcio's violations by themselves establish irreparable harm. *See*, *e.g. Government of the Virgin Islands v. Virgin Islands Paving, Inc.*, 714 F.2d 283, 286 (3d Cir. 1983) ("[W]hen a statute contains, either explicitly or implicitly, a finding that violations will harm the public, the courts may grant preliminary equitable relief on a showing of a statutory violation without requiring any additional showing of irreparable harm[.]"), *overruled on other grounds by statute, Edwards v. HOVENSA, LLC*, 497 F.3d 355, 359 (3d Cir. 2007).

11

The feared injury or harm from DiCiurcio's activities is no less than injury or death to a bystander struck by one of DiCiurcio's sUAS as he flies in inappropriate space and/or loses all control of the sUAS. Injury can also occur when DiCiurcio collides with a building (as he has threatened to do), or manned aircraft, moving vehicles, or wildlife.

In addition, DiCiurcio strives for celebrity status by operating sUAS improperly and flaunting his renegade persona. DiCiurcio urges others to flout the rules, misbehave as he does, and thus he multiplies the risks and threats to the public.

DiCiurcio's sustained disregard of safety rules, and fostering disrespect for safety rules, will likely end in irreparable disaster. Someone may be seriously injured or killed, possibly many if DiCiurcio succeeds in colliding with a medical helicopter, train, car, or manned aircraft – to say nothing of the property damage that DiCiurcio can cause, without ever being apprehended to face the consequences.

### D. Harm to the Government and to the Public Interest Weigh in Favor of Entering an Injunction.

The second and fourth factors for granting injunctive relief also weigh in favor of the government. Those factors—harm to the applicant and the public interest—merge when the government is the requesting party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This is because "the government's interest *is* the public interest." *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016). The coincidence of interest between the government and the public is especially apparent where "the public interest in question has been formalized in a statute." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 803 (3d Cir. 1989); *see also Gov't of V.I. v. V.I. Paving, Inc.*, 714 F.2d 283, 286 (3d Cir. 1983) ("The enactment of a comprehensive regulatory scheme is a reflection of the Legislature's view of the importance of the interests at stake.").

An injunction is appropriate, considering the substantial tension between DiCiurcio's ongoing conduct and "Congress' policy choice, articulated in a statute, as to what behavior should be prohibited." *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497 (2001) (district court considering equitable remedies in a suit under the Controlled Substances Act cannot consider "any and all factors that might relate to the public interest," but must heed the judgment of Congress).

Echoing the FAA's concerns, citizens submitted complaints about DiCiurcio's conduct and the likely effects of allowing him to continue. Philadelphians risk likely harm, including personal injury and property damage from DiCiurcio's activity, which is a direct threat to public safety. Given DiCiurcio's lengthy and openly boastful history of disrespect for public safety, Philadelphians should not be forced to contend with the threat of his continued risky behavior.

The remaining factor also weighs in the government's favor: DiCiurcio will not be substantially harmed by an injunction, which would merely prohibit him from continuing to disobey required safety regulations. For the last several years, despite training, counseling, notice of penalties, DiCiurcio has conspicuously and dangerously defied those safety measures. Accordingly, an injunction would mean that DiCiurcio has finally reached the end of his spree.

## IV.  CONCLUSION

For all of the foregoing reasons, the United States of America respectfully requests that the Court issue an order enjoining defendant Michael DiCiurcio from operating any civil aircraft not in full compliance with 49 U.S.C. § 44809 or 14 C.F.R. Part 107.

                                              Respectfully submitted,

                                              JACQUELINE C. ROMERO
                                              United States Attorney

|  |  |
|---|---|
|  | *s/ Gregory B. David* |
|  | GREGORY B. DAVID |
|  | Assistant United States Attorney |
|  | Chief, Civil Division |
|  |  |
|  | *s/ Viveca D. Parker* |
|  | VIVECA D. PARKER |
|  | Assistant United States Attorney |
|  | 615 Chestnut Street, Suite 1250 |
|  | Philadelphia, PA 19106 |
|  | Phone: (215) 861-8443 |
|  | Fax: (215) 861-8618 |
| Dated: February 13, 2024 | *Attorneys for the United States of America* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of February, 2024, I served a true and correct copy of the foregoing United States' Motion for Preliminary Injunction, with supporting brief by process server upon the following:

Michael DiCiurcio
1046 Emily Street
Philadelphia, PA 19148

*Pro se defendant*

*s/ Viveca D. Parker*
VIVECA D. PARKER
Assistant United States Attorney

Dated: February 13, 2024