IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Case No. 24-cv-612 |
| MICHAEL DICIURCIO, | ) |
| Defendant. | ) |

**DECLARATION OF MICHAEL D. BAUER**

1. I, Michael D. Bauer, am a Principal Maintenance Inspector ("PMI") in the Federal Aviation Administration ("FAA"). I began my employment for the FAA on May 10, 2010, as an Aviation Safety Inspector. The FAA is charged with regulating the operation of commercial and recreational aircraft, including small Unmanned Aircraft Systems ("sUAS"), also referred to as "drones."

2. My overall responsibility is to ensure that all aviation operators are adhering to federal safety regulations within the national airspace.

3. I am currently assigned as the sUAS Focal Point at the Philadelphia Flight and Standards Office.

4. I have been flying unmanned model aircraft since 1970 and I hold certifications as an Airframe and Powerplant Mechanic, private and remote pilot; and from The Recreational UAS Safety Test ("TRUST").

5. In addition to my sUAS responsibility, I have regulatory oversight specifically over maintenance programs and enforce the maintenance standards of four air carriers (that carry passengers); fifteen certificated repair stations (where specific aircraft components and

aircrafts are repaired); one school for aircraft mechanic technicians; and seventy-eight general aviation air operators (banner towers, sightseeing rides, crop dusters, aircraft used for specific jobs).

6. As a PMI, I also provide policy assistance for the development and implementation of standards, programs, and procedures for aviation safety guidance to the public. I also provide in-house training for sUAS inspectors and to help educate the sUAS operators in the general public to follow the regulations and operate safely in the national airspace.

7. As part of my duties as a PMI, I conduct investigations of accidents and complaints received from members of the public. In the course of an FAA investigation, I have the ability to conduct surveillance of air carriers and air agencies (i.e., flight schools, repair stations, etc.), for possible regulatory violations and to ensure that they are following the federal aviation regulations. I also conduct interviews and draft correspondence and reports.

### *The Rules and Regulations*

8. Operators of sUAS can be either recreational flyers, or certificated remote pilots. If the operator flies solely for recreational purposes he/she must pass the TRUST test, follow the rules for recreational flyers, and register the sUAS as necessary. For operators flying for commercial, government, or any other non-recreational purpose, the operator must learn the rules for certificated remote pilots, become a certificated remote pilot by taking and passing the remote pilot knowledge test, and register the sUAS. An explanation of the two types of sUAS operators, the rules for each type of operator, and much more information about operating sUAS is found on the FAA website at https://www.faa.gov/uas/getting_started .

9. Certificated remote pilots flying sUAS for non-recreational purposes are regulated under 14 C.F.R. Part 107, which provides in part that no person may operate an unmanned aircraft system in a careless or reckless manner. 14 C.F.R. § 107.23.

10. If an operator flies a sUAS solely for recreational purposes as a hobbyist, no Part 107 certificate is required. However, the recreational sUAS operator must adhere to the requirements of 49 U.S.C. § 44809, including passing a TRUST test to qualify as a limited recreational flyer. In addition, recreational flyers must adhere to the safety guidelines of a Community Based Organization ("CBO") for operating the sUAS in a safe manner.

11. A CBO is a membership based organization that has developed safety guidelines in coordination with the FAA that recreational flyers are expected to follow voluntarily. Recently, the FAA endorsed the safety guidelines developed by the Academy of Model Aeronautics. In addition, typically, sUAS products come with an operations guide which includes printed safety guidelines which closely track the statute and regulations.

12. Recreational flyers must not operate a sUAS in a manner that endangers the national airspace system; they must fly at or below 400 feet, and keep the sUAS within the visual line of sight. The operator must obtain prior authorization before operating in certain airspace, such as near an airport. Any airspace identified by letter is controlled airspace (Class A, B, C, D, E, and over 400 feet in Class G); operators need advance permission to fly in controlled airspace. Most of metro Philadelphia is in controlled airspace. More information is available at https://www.faa.gov/uas/recreational_flyers .

13. If a sUAS operator does not conform to the limitations set forth in 49 U.S.C. § 44809(a), he/she must comply with all generally applicable statutes and regulations governing sUAS operations (i.e., 14 C.F.R. Part 107). 49 U.S.C. § 44809(b).

*Violations 2019-2020*

14. On January 29, 2020, I was assigned to investigate a complaint sent to the FAA's Philadelphia Flight and Standards Office regarding Michael DiCiurcio operating his sUAS in an unsafe manner. I opened Enforcement Case 2020EA170009.

15. As part of my investigation, I referred to the file for the investigation of an earlier complaint; on August 12, 2019, the FAA's Philadelphia Flight and Standards Office opened Enforcement Case 2020EA170001. The earlier investigation related to a complaint describing DiCiurcio's dangerous operation of his sUAS demonstrated in video posts on his YouTube channel, PhillyDroneLife. I accessed the YouTube channel to view the video; the operator in the video recording of the August 10, 2019 flight identifies himself as Michael DiCiurcio. In the video, he records a sUAS flight over people and moving vehicle traffic. Additional videos posted to the PhillyDroneLife channel that I viewed show recordings of sUAS flights over skyscrapers in central Philadelphia, and in adverse weather conditions.

16. The file for Enforcement Case 2020EA170001 includes records of the FAA contacting DiCiurcio, speaking with him by telephone, and offering DiCiurcio in-person training, which DiCiurcio refused. On November 6, 2019, the FAA sent DiCiurcio written guidance on safe flying. On November 20, 2019, the FAA issued DiCiurcio a warning notice and provided additional educational materials highlighting the rules and regulations for safe sUAS flying.

17. The complaint I received on or about January 29, 2020, for which I opened Enforcement Case 2020EA170009, provided a link to DiCiurcio's YouTube channel, PhillyDroneLife. I enlisted my colleague, Aviation Safety Technician Joseph Downey, to assist in my investigation. Together, we watched livestreamed YouTube videos on PhillyDroneLife

that were posted since the FAA had sent DiCiurcio the warning letter and educational material on November 20, 2019. Videos had been posted almost daily since then. AST Downey and I watched dozens of videos to identify regulatory violations occurring during DiCiurcio's flights. Most, if not all, of the videos showed regulatory violations and careless and reckless sUAS flying. We selected several of the most blatant examples of careless and reckless sUAS flying, including: operating in Class B airspace (i.e., near the Philadelphia International Airport) without authorization; operating at night; operating over human beings; operating in adverse weather; and operating in non-line of sight.

18. The eleven videos we selected were saved by my colleague AST Downey to DVDs and included in our investigative report for Enforcement Case 2020EA170009.

19. Based on my review of the videos, and the result of the earlier investigation, I concluded that DiCiurcio posed a threat. Therefore, on February 7, 2020, we sent a Letter of Investigation to DiCiurcio's residence notifying him of our concerns and requesting a response within ten days. On March 12, 2020, DiCiurcio called the Flights and Standards Office and left a voicemail requesting a return phone call.

20. On March 12, 2020, I contacted DiCiurcio by telephone. DiCiurcio asked me what "reckless operations" means, and at his request I described to him examples of the regulatory violations I had seen in the videos of his flights posted on his YouTube channel, including: flying over 400 feet, flying over people, and flying in adverse weather. DiCiurcio responded that he "knows the rules," and ended the call.

21. On July 20, 2020, the Philadelphia Flight and Standards Office received another complaint regarding the unsafe operation of DiCiurcio's sUAS on May 4, 2020. We opened Enforcement Case 2020EA170016. My colleagues and I repeated the process of viewing the

videos posted to DiCiurcio's YouTube channel since my conversation with him on March 12, 2020. DiCiurcio was still posting videos almost daily. Most, if not all, demonstrated safety violations. I selected twenty-three of the worst examples for preservation. By this time, the FAA had established the Cyber Investigations Branch. I sent a request to the branch that they download the videos for preservation.

22. On July 29, 2020, my office sent a second Letter of Investigation to DiCiurcio related to the videos he posted since my last conversation with him on March 12, 2020. We did not receive a response from DiCiurcio.

23. My office forwarded two Enforcement Investigative Reports ("EIR") relating to Enforcement Case 2020EA170009, and Enforcement Case 2020EA170016, to the Northeast Team Aviation Litigation Division, which assigned Judith Vaughan, Senior Attorney of the Northeast Team Aviation Litigation Division, to the matter. Ms. Vaughan notified DiCiurcio in a letter dated November 5, 2020, of specific regulatory violations he had committed, and that he owed a substantial penalty for those violations.

24. Following Ms. Vaughan's November 5, 2020 letter notifying him of the penalty, on December 16, 2020, Judith Vaughan and I conducted a phone call with DiCiurcio. During the phone call DiCiurcio admitted to flying the sUAS flights depicted on his YouTube channel PhillyDroneLife; he also acknowledged receipt of the FAA's warning letters. DiCiurcio was informed that he would be assessed with a fine for the regulatory violations occurring during his flights.

25. On the phone call with DiCiurcio, he stated, "yes I'm the guy flying my drones," and added, "I use my drone as a hobbyist for fun only." When asked what Community Based Organization he is associated with, DiCiurcio stated he is "non-denominational," that he is not

a member of any organization and did not get any training. DiCiurcio stated, "well, I have received a lot of letters from the FAA and I guess I did get an educational and warning letter." DiCiurcio stated that "yes, I agree," that the flights described in the letters are accurate, and added, "but I need to look at it case by case, like the only flying in rain and wind, I don't fly in the rain and DJI has protections built into the drones. Also, that I thought I could fly 400' above a 400 foot building and I thought center city was class G airspace."

26.   With respect to the FAA $182,004.00 fine for violations identified in Enforcement Cases 2020EA170009 and EA170016, during the telephone call DiCiurcio stated that his only income came from his YouTube channel and that he could not afford to pay the fine. The fine has not been paid. In videos I have viewed since this December 16, 2020 conference call, DiCiurcio has made several statements on his YouTube channel that he will never pay any fines from the FAA and will not change his flight habits.

I declare under penalty of perjury under the laws of the Commonwealth of Pennsylvania that the foregoing is true and correct.

Date: 02/08/2024

MICHAEL D. BAUER
Digitally signed by MICHAEL D. BAUER
Date: 2024.02.08 10:36:41 -05'00'

MICHAEL D. BAUER
Principal Maintenance Inspector
Philadelphia Flight Standards District Office
Federal Aviation Administration